NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEORGE RODGERS, JR., : <br> : <br> Petitioner, : <br> : <br> v. : <br> : <br> UNITED STATES OF AMERICA : <br> : <br> Respondent. : | Civil No. 05-3271 (FLW) <br><br> **OPINION** |

**WOLFSON, District Judge**

This matter comes before the Court on a Motion to Vacate, Set Aside or Correct a Sentence pursuant to 28 U.S.C. §2255 by Petitioner pro se, George Rodgers, Jr. ("Petitioner" or "Rodgers"). Petitioner argues, inter alia, that 1) the Court should not have considered an enhancement of Rodgers's sentence for his brandishing of a firearm; 2) he was denied the effective assistance of counsel because he received "gross misinformation" from his counsel regarding the enhancement; and (3) in light of the Supreme Court's decision in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005), Petitioner's "plea cannot be said to have been made intelligently and voluntarily." The Court has considered the moving and opposition papers, and for the reasons that follow, the Court denies Petitioner's Motion.

**I. BACKGROUND**

On October 28, 2003, George Rodgers, Jr., while disguised as a woman and pointing a

1

firearm at a teller, robbed Farmers and Mechanic Bank in Cinnaminson, N.J. of $3,373.89. The next day, on October 29, 2003, Rodgers, again disguised as a woman and pointing a handgun at a teller, robbed the Equity Bank in Moorestown, N.J. of $3,046 and a customer of $150. On October 30, 2003 the FBI received a tip regarding Rodgers's possible involvement in area bank robberies. FBI agents, along with local police officers, conducted several interviews with the Petitioner, his mother, Louise Stallworth and others. Ms. Stallworth admitted that she drove Petitioner around in a green minivan at the time of the robberies and that Rodgers had changed into women's clothing, including a dress, during that time. Based upon this information, Rodgers was indicted on February 26, 2004.

On December 8, 2004, Petitioner Rodgers appeared before this Court and pled guilty to a two-count indictment. Petitioner admitted that he knowingly and willfully, by force and violence, and by intimidation robbed the two above-named FDIC-insured banks in violation of 18 U.S.C. §§ 2113(a) and 2. As part of his plea agreement, Petitioner stipulated to several Specific Offense Characteristics resulting in an increased Offense Level under the United States Sentencing Guidelines ("Guidelines"). These included stipulations that: (1) the property of a financial institution was taken, resulting in an increase of two levels, (2) a firearm was brandished or possessed, resulting in an increase of five levels, and (3) the two counts of the indictment did not group into a single count, resulting in an increase of two levels. The Probation Office's Pre-Sentence Investigation report combined the stipulated Specific Offense Characteristics with Petitioner's status as a career offender and the Base Offense Level for Bank Robbery to find a Total Offense Level of 32. After adjusting for Petitioner's acceptance of responsibility, this was amended to 29, putting Rodgers within the

Guideline range of 151 to 188 months imprisonment. On March 18, 2005, this Court sentenced Petitioner to 180 months imprisonment on each count, to be served concurrently.

On June 30, 2005, petitioner filed the current petition pursuant to 28 U.S.C. § 2255. Petitioner argues that (1) the Court "failed to establish a factual basis ... for his having a firearm," Pet.'s Br. at 7-8; (2) he was denied the effective assistance of counsel because he received "gross misinformation" from his counsel "concerning the maximu[m] penalty that he faced under the binding guidelines," id. at 11; (3) in light of the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738, 125 S.Ct. 738 (2005), Petitioner's "plea cannot be said to have been made intelligently and voluntarily," id. at 16; (4) the Court erred by sentencing Petitioner "in part upon conduct related to a 'firearm'"; and (5) the Court should "resentence" Petitioner "absent any enhancement related to brandishing a firearm or brandishing a dangerous weapon," id. at 24.

**II. DISCUSSION**

    **A.  § 2255 Standard**

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255; see also U.S. v. Rosendary, 152 F. Supp.2d 835, 838 (W.D. Pa. 2001). "Relief under this provision is generally available only in exceptional circumstances to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure ." Rosendary, at 838 (quoting U.S. v. Gordon, 979 F. Supp. 337, 339 (E.D. Pa. 1997);

Hill v. U.S., 368 U.S. 424, 428 (1962)) (internal quotations omitted).  Title 28 U.S.C. § 2255 generally "may not be employed to relitigate questions which were raised and considered on direct appeal." U.S. v. DeRewal, 10 F.3d 100, 105 n. 4 (3d Cir.1993) (quoting Barton v. U.S., 791 F.2d 265, 267 (2d Cir.1986)). Moreover, with regard to those claims which were never raised on direct appeal, the Supreme Court's decision in U.S. v. Frady, 456 U.S. 152 (1982), reaffirmed the "cause and actual prejudice standard" which was first enunciated in Davis v. U.S., 411 U.S. 233 (1973). DeRewal, at 103. Under this standard, "a convicted defendant must show both (1) 'cause' excusing his ⋯ procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." Id. (quoting Frady, at 168)). It is well recognized, however, that a claim of ineffective assistance of counsel should be raised under Section 2255 rather than on direct appeal. DeRewal, at 103-04.

"In considering a motion to vacate a defendant's sentence, 'the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.' U.S. v. Booth, 2005 WL 3544875, *3 (3d Cir. Dec. 29, 2005) (quoting Government of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir.1989)).  The district court is required to hold an evidentiary hearing "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." Id.  "If [the] petition allege[s] any facts warranting relief under § 2255 that are not clearly resolved by the record, the District Court [is] obligated to follow the statutory mandate to hold an evidentiary hearing." United States v. McCoy, 410 F.3d 124, 131, 134 (3d Cir. 2005).

Here, Petitioner agreed that in return for the Government's concessions in the plea agreement, he would not file a § 2255 motion challenging "the Court's authority to sentence

4

under the Sentencing Guidelines in accordance with the stipulations" entered into or claiming "that the facts found pursuant to these stipulations must be charged in the indictment, submitted to a jury, or proven beyond a reasonable doubt." Plea Agreement with George Rodgers, Jr. at 5. Petitioner nevertheless brought the instant challenge.

Waivers of appeals are valid and enforceable as long as they are entered into knowingly and voluntarily, and they do not work a miscarriage of justice. United States v. Khattak, 273 F.3d 557, 563 (3d Cir.2001). The same principle applies in the context of a defendant waiving his right to seek collateral relief under 28 U.S.C. § 2255. See United States v. Garrett, No. 03-6176, 2005 WL 768761 (10th Cir.2005); United States v. Jeronimo, 398 F.3d 1149 (9th Cir.2005); United States v. White, 307 F.3d 336 (5th Cir.2002).

In the case at bar, there is nothing to suggest that Petitioner's waiver of these rights was unknowing or involuntary, nor can Petitioner articulate any "miscarriage of justice" which would result from the enforcement of the waiver.  Nonetheless, since he now contends that he was misinformed and that he unintelligently and involuntarily entered into his plea, this Court will address the merits of Petitioner's motion.

**B. Ineffective Assistance of Counsel**

To prevail on a claim of ineffective assistance of counsel, a petitioner must satisfy a stringent two part test establishing that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984).  In order to prove deficiency under the first prong, petitioner must show that defense counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id.  Morever, to show actual prejudice under the second

5

prong, a defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial." Id.  In Strickland, the Court noted that simply showing that counsel's errors had some "conceivable effect on the outcome of the proceeding" was insufficient because nearly every act or omission by counsel would meet such a low threshold. Id. at 694. Instead, the Court held that a petitioner asserting a claim for ineffective assistance of counsel must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id.

With this standard in mind, the Court considers petitioner's claim for relief. Petitioner alleges his attorney was ineffective for failing to explain the guideline range to which he was exposed, which led him to make an involuntary guilty plea. Pet.'s Br. at 11. Due to his ignorance on these issues and his lawyer's failure to provide guidance on these topics, Petitioner claims he entered into the plea agreement in an involuntary and unintelligent state.[1]

At his plea, Petitioner indicated that he had "discussed the Sentencing Guidelines with [his] attorney," and that she "explained to [him] the various considerations that go into determining what guideline shall be applied." Transcript of Guilty Plea Proceedings ("Plea Tr.") at 15:15-21.  Petitioner also indicated that his "attorney made a prediction as to the guideline

---

[1] Petitioner also argues that his counsel was ineffective as a result of her "failure to inform and advise [him] on the recent United States Supreme Court decisions in" Blakely v. Washington, 542 U.S. 296 (2004) and United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005).  However, at Rodgers's sentencing, he swore that he "discuss[ed]" Booker with his attorney, "underst[ood] that [Booker] dealt with the Sentencing Guidelines under which [he] agreed to be sentenced at the time of [his] plea" by rendering them "advisory," and understood that the "Court [would] consider the guidelines in determining an appropriate sentence." Transcript of Sentencing Proceedings ("Sentencing Tr.") at 4:14-5:9.  Moreover, Petitioner has not demonstrated that the Court did not comply with Booker when it sentenced him. See Discussion, infra § II(D).

range which she believe[d] ... appl[ied] based on the information" she possessed at that time. Id. at 15:22-16:1. When I asked Petitioner if he "underst[ood] that the sentence imposed may be different from any estimate [his] attorney may have given" him, he said answered, "Yes." Id. at 16:22-25. He also indicated that he understood that his attorney's determination could not be completely accurate because she did not possess "all the necessary information and has not seen the presentence report." Id. at 16:2-8. Finally, Petitioner stated that he understood that he would "not be able to withdraw [his] plea on the ground that anyone's prediction as to the guideline range proved to be inaccurate." Id. at 16:9-13. As such, Petitioner's allegations in the instant matter contradict the sworn testimony he made during his plea. See id. at 14:5-16:25. Moreover, at his plea, he also averred that no one "attempted in any way to force [him] to plead guilty" and that he was "pleading guilty of [his] own free will because [he was] guilty." Id. at 9:2-7. Therefore, Petitioner has not demonstrated he entered the plea agreement unintelligently or involuntarily. Thus, his ineffective assistance of counsel claim must fail because he has not shown that counsel's performance was deficient and prejudicial, as set forth in Strickland.[2]

**C. Petitioner's Stipulation and Plea**

Petitioner also contends that the Court: (1) "failed to establish a factual basis ... for his having a firearm"; (2) the Court erred by sentencing Petitioner "in part upon conduct related to a 'firearm'"; and (3) the Court should "resentence" Petitioner "absent any enhancement related to brandishing a firearm or brandishing a dangerous weapon." He explains that he "never stipulated to the presentence report's allegation that he brandished a 'firearm', and the Court failed to

---

[2]The Court also finds that Petitioner's contention that his attorney, Ms. Koch, colluded with the United States Attorney is without merit.

conduct an evidentiary hearing on the subject." Pet.'s Br. at 5.  He further explains that "[a]t the plea hearing, only the elements constituting the crime of bank robbery were explained.  There was no reading by the Court which postulated that a weapon of any kind had been charged in the Government's Information." Id. at 21.

Notwithstanding Petitioner's contentions, Schedule A of his plea agreement reveals that he stipulated to the fact that "a firearm was brandished or possessed."  Plea Agreement at 5.  Furthermore, at his plea hearing, Petitioner made clear that he "consented" and "agreed" to the stipulations set forth in his plea agreement "as if they had been charged in the indictment and found by a jury beyond a reasonable doubt." Id. at 13:24-14:4.  Moreover, at his plea hearing, he swore that on October 28, 2003, "while carrying a gun," he entered the Farmers & Mechanics Bank and instructed the bank teller to give him money. Id. at 21:2-12.  He also swore that the next day, while he "carried a gun," he entered Equity Bank and demanded money. Id. at 22:2-11.  As such, Petitioner's plea agreement, the stipulations into which he entered, and his own sworn testimony serve as the basis for the Court's consideration of the firearm when determining Petitioner's sentence and applicable enhancements.  Therefore, these claims also fail.  Moreover, since the plea agreement, plea hearing transcript and sentencing hearing transcript show conclusively that Rodgers's allegations regarding his counsel and the Court's consideration of the firearm are clearly frivolous, the Court will not hold an evidentiary hearing. See Booth, 2005 WL 3544875 at *3; Forte, 865 F.2d at 62.

   **D.  Blakely and Booker**

Finally, to the extent that Petitioner is bringing any claims pursuant to the United States Supreme Court's holdings in Blakely v. Washington, 542 U.S. 296 (2004) and United States v.

Booker, 543 U.S. 220, 125 S.Ct. 738 (2005), those claims also fail.  First, the Court notes that Petitioner's reliance on Blakely is misplaced.  Blakely extended Apprendi v. New Jersey, 530 U.S. 466 (2000), and found that the State of Washington's determinate-sentencing scheme violated the Sixth Amendment right to a jury trial because judges were imposing sentences that were not based solely on the facts reflected in the jury verdict or admitted by the defendant, and were using a preponderance of the evidence standard to find the facts necessary to impose sentence.  See Blakely, 542 U.S. at 300-306.  The Blakely court also found that the "statutory maximum" for Apprendi purposes, is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.  See id. at 303 (internal citation omitted).  However, Blakely expressly reserved decision on whether such a rule also applies to the Federal Sentencing Guidelines.  See id. at 2538.  The Supreme Court in United States v. Booker subsequently applied Blakely's holding to such Guidelines. 543 U.S. 220, 125 S.Ct. 738 (2005).  Therefore, it is Booker, not Blakely, that is applicable to his case.

Applying Blakely to the Federal Sentencing Guidelines, the Supreme Court held in Booker that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker,125 S.Ct. at 756.  Here, Defendant admitted, by way of his stipulation and sworn testimony, that he was carrying a firearm when he robbed both banks in October 2003.  Plea Agreement at 5; Plea Tr. at 21:2-22:11.

The Booker Court also held that mandatory enhancement of a sentence under the Guidelines, based on facts found by the court alone, violates the Sixth Amendment, and, as a

result, excised that provision of the statute making application of the Guidelines mandatory. Id. at 756, 764. In the aftermath of Booker, the Federal Sentencing Guidelines are "effectively advisory." Id. at 757. Under the post- Booker sentencing framework, district courts consider the applicable advisory Guidelines range in addition to factors set forth in 18 U.S.C. § 3553(a). See Booker, 125 S.Ct. at 764-65.  Here, while proceeding "in accordance with the directions of the Supreme Court under Section 3553(a)," Sentencing Tr. at 19:22-23, the Court sentenced Rodgers near the "high end of the guideline range," id. at 24:20-21, as a result of, inter alia, the seriousness of the robberies, his criminal history and lack of remorse, and the need to deter Rodgers and protect the public from him, id. at 19:20-24:22.  Indeed, I engaged in a step-by-step analysis of each of the factors set forth in sec 3553(a).  Moreover, the Court made clear when it sentenced Petitioner that when doing so, it had "consider[ed] the Sentencing Guidelines in an advisory fashion." Id. at 25:13-14.  Therefore, Petitioner's sentencing did not run afoul of Booker and the Court will not resentence Petitioner.

### III.     CONCLUSION

For the foregoing reasons, Petitioner's motion to vacate, set aside or correct his March 18, 2005 sentence pursuant to 28 U.S.C. § 2255 is hereby denied.  The Court will issue an appropriate order.

Dated: January 5, 2006

　　　　　　　　　　　　　　　　　　　　　　　S/ Freda L. Wolfson
　　　　　　　　　　　　　　　　　　　　　　　Honorable Freda L. Wolfson
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge